FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUL 2 4 2006

JAMES R LARSEN, CLERK
_____DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,           )
                                     )
                    Plaintiff,       )    No. CR-06-2057-AAM
                                     )
        v.                           )    **ORDER DENYING**
                                     )    **MOTION TO DISMISS**
EDUARDO HERNANDEZ-HERNANDEZ,)
                                     )
                    Defendant.       )
_____)

A pre-trial conference hearing was conducted on July 21, 2006. Shawn N. Anderson, Esq., Assistant United States Attorney, appeared for the government. Kurt Rowland, Esq., appeared for the defendant.

The court announced its decision to deny defendant's Motion To Dismiss (Ct. Rec. 29). Subsequently, defendant entered a plea of guilty to the indictment charging him with being an Alien in United States After Deportation, 8 U.S.C. §1326. This was a conditional plea, preserving defendant's right to appeal the court's denial of his Motion To Dismiss. The court then proceeded to sentence the defendant.

The following represents the court's reasoning for denying defendant's Motion To Dismiss.

## I. BACKGROUND

On February 1, 2002, the Immigration and Naturalization Service (INS), now the Bureau of Immigration and Customs Enforcement (BICE), served the

**ORDER DENYING**
**MOTION TO DISMISS-        1**

1  defendant with a Notice To Appear (Ex. B to Defendant's Opening Br.), claiming
2  defendant was not a citizen or national of the United States; that he was a native of
3  Mexico and a citizen of Mexico; that he had arrived in the United States on or
4  about May 15, 1998; and that he did not have permission to enter the United
5  States.  This Notice To Appear was served on the defendant while he was in the
6  Sunnyside Jail, apparently having been convicted of Assault in the Fourth Degree,
7  Domestic Violence, on January 31, 2002.

8      On February 12, 2002, defendant appeared before an Immigration Judge (IJ)
9  in Seattle.  Defendant admitted entering the United States in 1998 without
10 permission, and admitted his conviction for a domestic violence offense.  He
11 waived his right to an appeal and so the IJ issued an order of removal and the
12 defendant was physically removed from the United States on February 15, 2002.
13 This February 15, 2002 deportation is the basis for the indictment against the
14 defendant.

15     Defendant contends his due process rights in the deportation hearing were
16 violated because the IJ failed to advise him of his apparent eligibility for relief
17 from removal in the form of a waiver of inadmissibility under 8 U.S.C. §1182(h),
18 also known as §212(h) of the Immigration and Nationality Act.  In order to obtain
19 a §212(h) waiver, an alien must demonstrate that his deportation would cause
20 "extreme hardship" to a "spouse, parent or child" who is a citizen or lawful
21 permanent resident.

22

23 **II. DISCUSSION**

24     "In a criminal prosecution under §1326, the Due Process Clause of the Fifth
25 Amendment requires a meaningful opportunity for judicial review of the
26 underlying deportation."  *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197
27 (9th Cir. 1998), *overruled on other grounds by United States v. Corona-Sanchez*,

28

**ORDER DENYING**
**MOTION TO DISMISS-        2**

291 F.3d 1201 (9th Cir. 2002)(en banc). "If the defendant's deportation proceedings fail to provide this opportunity, the validity of the deportation may be collaterally attacked in the criminal proceeding." *Id*. In order to succeed on such a collateral attack, the defendant must demonstrate: "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Id*. The prejudice prong is satisfied when the alien demonstrates "plausible grounds for relief which might have been available to him but for the deprivation of rights." *Id*. at 1198.

"Where the record contains an inference that the petitioner is eligible for relief following deportation, the [Immigration Judge] must advise the alien of this possibility and give him the opportunity to develop the issue." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). This requirement is "mandatory." *Id*. If the IJ fails to so advise the alien, this is a due process violation because an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right. *Id*.

In *Arrieta*, the Ninth Circuit found the IJ should have known Mr. Arrieta was eligible to apply for a §212(h) waiver since the record established that his mother was a lawful permanent resident and that his daughter was a U.S. citizen. The IJ, however, never mentioned the waiver or any other possible mechanism to obtain relief from deportation. Therefore, Mr. Arrieta's waiver of the right to appeal the IJ's deportation order was invalid. *Id*. The Ninth Circuit also found that Mr. Arrieta "plausibly" could have received a §212(h) waiver, rejecting the government's assertion that the conviction underlying his deportation was an aggravated felony and that he failed to show his deportation would be an "extreme hardship" for his family.

In the case before this court, the government concedes the IJ did not advise the defendant of eligibility for §212(h) relief, but asserts the IJ did not need to

**ORDER DENYING
MOTION TO DISMISS-        3**

1  because there was nothing in the record before the IJ to raise an inference that
2  defendant was eligible for such relief.  The government notes that at the February
3  12, 2002 deportation hearing, the defendant "never indicated he had a family
4  relationship with anyone in the United States."

5      The defendant contends the record before the IJ did raise an inference that
6  defendant's father was a lawful permanent resident (LPR) of the United States.  At
7  the deportation hearing, the IJ had before him the I-213 form, "Record of
8  Deportable/Inadmissible Alien," which was admitted into evidence.  (Exs. D and E
9  to Defendant's Sealed Reply Br.).  This form indicates that defendant's father,
10 Santiago Hernandez, "who is currently in Mexico, filed a petition on [defendant's]
11 behalf in May 2001," apparently referring to a petition for lawful admission to the
12 United States.[1]  There is no dispute that defendant's father, Santiago, is a lawful
13 permanent resident of the U.S.  In his declaration (Ex. A to Defendant's Opening
14 Br.), Santiago Hernandez indicates he obtained his legal status in 1986 and that his
15 son (the defendant) came to live with him when he was 15 years old (which would
16 have been in 1998).  The I-213 form indicates that Santiago Hernandez is a
17 national of Mexico (which is accurate since he is an LPR and not a citizen) and
18 that his address is "S/A (currently in Mexico)."  Defendant points out that the
19 "S/A" is a notation for "Same Address," indicating that Santiago Hernandez was
20 living at the same address as the defendant, that being "Unk. Address on 7th Street,
21 Sunnyside, WA."

22      Where the record, "fairly reviewed by an individual who is intimately
23 familiar with the immigration laws– as [immigration judges] no doubt are – raises
24 a reasonable possibility that the petitioner may be eligible for relief, the IJ must

25 _____

26   [1] It is unclear whether the defendant, as an illegal alien, could have filed the
27 petition, or if it was necessary for his father, as a lawful permanent resident, to file
   the petition on defendant's behalf.
28

**ORDER DENYING**
**MOTION TO DISMISS-       4**

1   inform the alien of this possibility and give him the opportunity to develop the

2   issue." *Moran-Eniquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989).  Immigration

3   judges "are not expected to be clairvoyant; the record before them must fairly raise

4   the issue." *Id.* at 422.  The record before the IJ in the case at bar "fairly" raised a

5   reasonable possibility that defendant was eligible for §212(h) relief because it

6   suggested defendant's father was a lawful permanent resident of the U.S. and

7   indicated that defendant had been residing with his father in Sunnyside.

8       The defendant, however, must still demonstrate that he suffered prejudice as

9   a result of this violation.  To establish prejudice, defendant does not have to show

10  that he actually would have been granted relief, but that he had a "plausible"

11  ground for relief from deportation.  *Arrieta*, 224 F.3d at 1079.   Specifically, in the

12  §212(h) context, the defendant must demonstrate that he could have made a

13  "plausible" showing to the IJ that his deportation would cause "extreme hardship"

14  to his father who is an LPR.

15      In *Arrieta*, the Ninth Circuit discussed its prior decision in *United States v.*

16  *Arce-Hernandez*, 163 F.3d 559 (9th Cir. 1998), wherein it found that the defendant

17  did not make a "plausible" showing of extreme hardship to his family by virtue of

18  his deportation because the difficulties he identified, economic hardship and the

19  difficulty of relocation, were typical when one spouse is deported.  224 F.3d at

20  1082.  "*Arce-Hernandez* simply stands for the proposition that economic hardship

21  caused by the deportation of a family's primary bread-winner, combined with the

22  difficulties of relocating, do not, standing alone, constitute the extreme hardship

23  necessary to justify relief." *Id.*  In *Arce-Hernandez*, there had been no occasion to

24  consider the specific hardship caused by family separation. *Id.*

25      In *Arrieta*, the Ninth Circuit noted that "[t]he existence of family ties in the

26  United States is the most important factor in determining hardship." *Id.* at 1082.

27  The circuit then discussed Mr. Arrieta's particular situation:

28

**ORDER DENYING**
**MOTION TO DISMISS-        5**

As in *Arce-Hernandez*, the record in this case shows that Mr. Arrieta provides his family with significant financial support. But unlike in *Arce-Hernandez*, Mr. Arrieta provided evidence of extreme hardship to his family extending well beyond deprivation of such support. He provided an affidavit from his mother documenting the critical role Mr. Arrieta played in raising his younger siblings. Mr. Arrieta's mother was in very poor health, and she was raising two citizen children. His mother documented the essential assistance Mr. Arrieta provided in helping to raise those children, especially when she was medically unable to do so. She also documented the severe sense of personal loss she felt when Mr. Arrieta was deported. Mr. Arrieta was not a spouse, but a son and brother. It was evident from the record that the effect of the deportation order would be separation rather than relocation. The record also showed that Mr. Arrieta's hardship would cause serious non-economic hardships to the family, in addition to the "typical" financial hardship found in *Arce-Hernandez*.

*Id.* Accordingly, the Ninth Circuit found the evidence produced by Mr. Arrieta established it was "plausible" he would have been granted a §212(h) waiver and therefore, reversed his conviction under 8 U.S.C. §1326. *Id.* at 1082-83.

Defendant, in the instant case, contends his situation is like Mr. Arrieta in that his deportation separated him from his father and deprived his father of defendant's emotional and other non-economic familial support (i.e., assistance because defendant is literate while his father is not), as documented in the declaration of Santiago Hernandez (Ex. A to Defendant's Opening Br.).

By the time the defendant entered the United States in 1998 to join his father, his father had already been in this country as an LPR since 1986 without any other family members apparently having joined him between 1986 and 1998. This is borne out by the declaration of defendant's father in which he states that defendant "helped me pay the fees that had to be submitted with the immigration paperwork for our other family members" and helped fill out immigration paperwork for "the rest of the family." The court must agree with the government that it can reasonably be inferred that between 1986 and 1998, defendant's father managed without the assistance of any family and despite being illiterate.

**ORDER DENYING**
**MOTION TO DISMISS-      6**

Moreover, defendant's father apparently has no difficulty traveling to Mexico to see his family, as borne out by the I-213 form which indicates that in February 2002 he was "currently in Mexico."[2]

This court is unpersuaded that defendant could have plausibly established in 2002 that his deportation would have caused "extreme hardship" to his father and therefore, that defendant would have qualified for a §212(h) waiver.

## III.  CONCLUSION

Although defendant has demonstrated a due process violation, he has not demonstrated that he was prejudiced by the violation.  Accordingly, defendant's Motion To Dismiss (Ct. Rec. 29) is **DENIED**.

**IT IS SO ORDERED.**  The District Executive shall forward copies of this order to counsel.

**DATED** this 24th of July, 2006.

ALAN A. McDONALD
Senior United States District Judge

---

[2] The I-213 form indicates that in February 2002, defendant's mother, Apolonia, was a national of Mexico, with an address in Mexico.

**ORDER DENYING**
**MOTION TO DISMISS-    7**